UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CASSANDRA A. BIES, *as Administrator of the Estate of Cory Bies*, deceased, and CASSANDRA A. BIES, *Individually*,

         Plaintiffs,       **REPORT AND**
                       **RECOMMENDATION**
    -against-           17-CV-3354 (JMA) (ARL)

COUNTY OF NASSAU and COUNTY OF NASSAU *doing business as County of Nassau Probation Department*,

         Defendants.
-------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

  Before the Court on referral from District Judge Azrack are the motion for judgment on the pleadings of the defendants, the County of Nassau (the "County") and the Nassau County Probation Department (the "Probation Department"), pursuant to Fed. R. Civ. P. 12 (c) and the plaintiff's cross-motion to amend the complaint should the Court's decision on the motion for judgment on the pleadings deem such an amendment necessary. For the reasons that follow, the undersigned respectfully recommends that the defendants' motion be granted, but that the plaintiff be granted leave to amend the complaint.

BACKGROUND

  The facts set forth in this report were drawn from the complaint together with "documents incorporated in it by reference" and "document[s] upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).[1] The facts are taken as true for

---

[1] The plaintiff's memorandum of law fails to comply with the requirements for filing motion papers set forth in Local Civil Rule 6.1. The plaintiff's "Certification and Memorandum in Opposition to the Defendant County of Nassau Motion for Dismissal" is hybrid document that combines elements of a memorandum and an improper declaration along with exhibits. Indeed, although counsel for the plaintiff states in the body of the memorandum that he is submitting an "affirmation and exhibits in opposition" to the motion, see Pl's. Mem. at 2, counsel has not stated that the matter is "subscribed by him, as true under penalty of perjury," nor is the declaration signed. *See* 28 U.S.C. § 1746. Should the plaintiff be granted leave to amend, the undersigned recommends that the Court reject

purposes of deciding the instant motion.

The plaintiff, Cassandra A. Bies ("Bies"), is the administrator of the estate of her deceased son, Cory Bies ("Cory"). Compl. ¶¶ 6-7. On June 19, 2013, following a jury trial, Cory was found guilty of driving while intoxicated. *Id.* ¶ 20. He was sentenced to probation on April 28, 2014. *Id.* The conditions of his probation included "specific alcohol and illicit drug prohibitions." *Id.* ¶ 22. On June 11, 2016, Cory died from a lethal mixture of controlled substances. *Id.* ¶ 24. He was on probation on the date of his death. *Id.* ¶ 20.

### A. Cory's Medical History

In late 2013, approximately six months after his trial, Cory was brought to the Nassau University Medical Center ("NUMC") by police after he punched his father and threatened his mother. *Id*. He was diagnosed with "schizophrenia impulse disorder." *Id.* According to the Bies, while Cory was hospitalized, Cory stole pain medication from his grandmother. *Id.*

In January 2014, Cory was seen at Stony Brook University Medical Center where he was diagnosed with "paranoia and related illness." *Id.* At the time, Cory believed that the FBI had been following and harassing him. *Id.* On January 2, 2014, Cory was admitted to South Oaks Hospital ("South Oaks") where he was again diagnosed with schizophrenia and schizoaffective disorder. *Id.* Cory was discharged from South Oaks on January 16, 2014 and was prescribed

---

any further submissions from the plaintiff that fail to follow the procedural requirements of the Court.

medication.  *Id.*  On March 26, 2014, Cory was readmitted to NUMC where he remained until July 11, 2014.[2]  *Id.*  On July 14, 2014, Cory was then admitted to Mercy Medical Center Hospital where he was also diagnosed with schizophrenia, as well as "substance abuse and aggression towards his parents." *Id.*

### B. Cory's Involvement with the Probation Department

The complaint does not describe any events occurring between July 2014 and May 2016. Indeed, Bies next alleges that on May 10, 2016, the Probation Department made a surprise visit to Cory to drug test him at their home at 10 Newport Dr., Plainview, NY.  *Id*. ¶ 24.  During the May visit, Cory admitted to the Probation Officer that he had taken oxycodone.  *Id.*  Despite his admission, no action was taken by the Probation Department.  *Id.*  Fifteen days later, Bies telephoned the Probation Department and reported that Cory was using illegal drugs and acting strangely.  *Id*.  Bies suggested that Cory needed help and an immediate drug test.  *Id*. Whomever she spoke to at the Probation Department indicated that someone would follow up, but no action was taken in response to her call.  *Id.*

On May 28, 2016, Cory was then visited at home by a man who resided in a housing project in Manorville, New York.  *Id*.  Although she was not home at the time, Bies believes that the man brought heroin to Cory for purchase and consumption.  *Id*.  Bies states that when

---

[2] The dates set forth in the complaint appear to be inconsistent.  Bies alleges that her son was hospitalized from March to July 2014.  *Id.* ¶ 20.  However, she also alleges that Cory was sentenced to probation in April 2014.

she returned home and realized that Cory had consumed controlled substances, she confronted her son. *Id*. Bies alleges that Cory became combative and nasty and she feared for her life. *Id*. At some point, thereafter, Cory threw his sister across a room. *Id*. Cory also "became crazed" with Bies and her husband. Following the altercation, Cory's sister filed a NYS Domestic Incident Report with the police. *Id.*

Bies asserts that she "timely reported" the May 28 incident to the Probation Department, but it took no action in response to her report. *Id*. Bies also claims that on May 29, 2016, she or someone else made successive calls to the Probation Department and reported that Cory was using drugs and had assaulted his father and sister. *Id*. In fact, fearing that his son would harm the family, Cory's father checked Cory into the Holiday Inn Hotel in Plainview that day. *Id*. Bies alleges that the family notified the Probation Department that they had removed Cory from their home because he was using drugs and they feared that he would cause them serious harm. *Id*. Bies says that the Probation Department did not respond to that report. *Id*. Three days later, Cory missed his intake appointment, but the Probation Department took no immediate action. *Id*. On June 2, 2016, Cory also missed a Probation Department appointment and no immediate action was taken by the Probation Department. *Id.*

Four days later, Jeffrey Bies, Cory's father, called the Probation Department and asked to have his son violated. *Id*. At some point, a supervisor at the Probation Department, told Cory's father that the County was not a "babysitter." *Id*. ¶ 32. However, notwithstanding

4

the alleged babysitting comment, on June 8, 2016, the Probation Department did make a surprise visit to the Holiday Inn Hotel to perform a drug test prior to Cory's Probation Department appointment scheduled for the following day.  *Id.*  Cory's drug test was negative.  *Id.*  Bies contends that Cory knew he would be drug tested before the June 9th appointment, so he was clean of drugs.  *Id.*

Accordingly, on June 9, 2016, Cory's father spoke to someone at the Probation Department and explained that Cory understood how to avoid a positive drug testing by abstaining from heroin use for three (3) or more days before a test while at the same time-consuming large amounts of water.  *Id.*  He begged the officer to schedule another surprise visit his son on a date when a scheduled appointment was not calendared.  *Id.*  The Probation Department stated it would investigate the situation.  *Id.*  Tragically, two days later, Cory died from an overdose at the Holiday Inn Hotel.  *Id.* ¶ 24

## DISCUSSION

### A.  Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure allows for either party to move for judgment on the pleadings, "after the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6).  *See Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013).  The Supreme Court clarified the appropriate

pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

Moreover, "the purpose of [Rule 12(c)] is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint but does not weigh the evidence that might be offered to support it." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). Therefore, in adjudicating a motion under Rule 12(c), "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which

6

judicial notice may be taken." *Serdarevic v. Centex Homes, LLC,* 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). However, "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation and internal quotation marks omitted). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Id.* (quoting *Global Network*, 458 F.3d at 156). In addition, "'[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Global Network*, 458 F.3d at 157 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

**B.     Analysis**

**1.     The Probation Department**

As a threshold matter, the Court addresses the defendants' claim that the Probation Department is not a suable entity and should be, therefore, be dismissed from the action. The defendants correctly state that under New York law, departments, such as the Probation Department, are merely administrative arms of a municipality, and thus, do not have a legal

identity separate from the municipality. *See Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). Bies dos not disagree. Indeed, in her memorandum, Bies clarifies that the caption was not intended to "convey anything other than Nassau County as the defendant." Pl.'s Mem. at 17. According, the undersigned recommends that the caption be amended to reflect that Nassau County is the only named defendant.

### 2. The Defendant's Duty to Supervise and Control Cory

Count One of the complaint asserts that Cory's death occurred as a result of the negligence, carelessness and recklessness of the County with respect to its custody, supervision and control of Cory. Compl. ¶¶ 42-44. "In New York, '[a]n action to recover for negligence does not lie unless there exists a duty on the part of the defendant and a corresponding right in the plaintiff.'" *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 383 (E.D.N.Y. 2009) (*citing Donohue v. Copiague Union Free School Dist.*, 64 A.D.2d 29, 32–33, 407 N.Y.S.2d 874 (2d Dep't 1978)). "When a negligence claim is asserted against a municipality . . . , the threshold inquiry is 'whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose.'" *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013) (*citing Applewhite v. Accuhealth*, Inc., 21 N.Y.3d 420, 425, 972 N.Y.S.2d 169, 172, 995 N.E.2d 131, 134 (June 25, 2013)). Indeed, "[w]here, as here, a municipality undoubtedly acts in a governmental capacity, a plaintiff may not recover without proving that the municipality owed a 'special duty' to the injured party." *Id.* (citing Valdez v. City of New

8

York, 18 N.Y.3d 69, 75, 936 N.Y.S.2d 587, 960 N.E.2d 356)).  The fundamental principle underlying the rule is that "to sustain liability against a municipality, the duty breached must be more than that owed the public generally." *Id.*  Accordingly, if a plaintiff fails to prove that a special relationship existed, the analysis ends, and liability may not be imputed to the municipality.  *See id*.

In this case, the County argues that the complaint fails to plead that it had a "special relationship" with Cory.  "To establish a special relationship beyond the duty that is owed to the public generally, four elements must be present:

> (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

*Id.* at 135.  To this end, Bies asserts that pursuant to section 410.50 of the New York State Criminal Procedure Law, the Probation Department had a duty to supervise Cory during the period of his "legal custody." Compl. ¶ 23.  She further notes since the Probation Department had reasonable cause to believe that Cory had violated a condition of his probation, the Probation Department could have issued a search warrant or taken Cory into custody.  *Id*.  Bies has not, however, adequately pled that Cory was justified in his reliance on the Probation Department's assurance that it would keep him drug free.  *See Valdez*, 18 N.Y.3d at 81 ("We have previously

9

emphasized the importance of [the fourth] factor, describing it as "critical" because it "provides the essential causative link between the 'special duty' assumed by the municipality and the alleged injury"). While it is alleged that the Probation Department could have imposed sanctions on Cory, such as searching his home or causing a warrant to be issued for his arrest, Bies has not sufficiently alleged that the existence of those powers established a justifiable reliance that the Probation Department was going to control his conduct in such a way as to prevent him from using drugs or taking his own life during a drug overdose. Accordingly, the Court finds that the plaintiff has not sufficiently plead a special relationship with the County, and thus, the undersigned recommends that plaintiff's negligence claim be dismissed with leave to renew.[3]

### 3. The Government Immunity Defense

Moreover, even if Bies had adequately pled the existence of a special relationship between Cory and the Probation Department, the County correctly argues that it is likely to be found immune from liability because the Probation Department was performing a discretionary function. "'[T]he common-law doctrine of governmental immunity [shields] public entities from liability for discretionary actions taken during the performance of government functions.'" *Denis v. Town of Haverstraw*, 852 F. Supp. 2d 405, 410–11 (S.D.N.Y. 2012) (citing *Valdez*, 960

---

[3] Given the undersigned's findings, the Court need not address Count Two of the complaint, which appear to assert a claim for comparative negligence under C.P.L.R. §§ 1601 and 1602.

N.E.2d at 361). Indeed, when a municipal defendant's conduct involves the exercise of discretion, "the officer is not liable for the injurious consequences of that action even if resulting from negligence . . . ." *In re World Trade Cntr. Bombing Litig.*, 17 N.Y.3d 428, 933 N.Y.S.2d 164, 957 N.E.2d 733, 749 (2011). In this case, the crux of the plaintiff's complaint is that the Probation Department failed to violate her son despite ample notice that he was not complying with the conditions of his parole. However, while Bies certainly can argue that more could have been done in response to her families' pleas for assistance, the fact remains that the alleged negligent acts of the Probation Departments, namely the failure to arrest Cory for violating the conditions of his probation or to subject him to additional drug testing, involved the exercise of discretionary authority. Thus, the County can raise a government function immunity defense.

### 4. The Plaintiff's Claims Pursuant to 42 USC §§ 1981, 1983 and 1985

Count III entitled "Civil Rights Violations" must also be dismissed. To begin with, the allegations set forth in count three do not even state which of Cory's civil rights were violated. In fact, interpreted liberally, Bies appears to be asserting a claim for inadequate supervision. However, the complaint is silent as the alleged constitutional depravation.[4] In addition, while

---

[4] In her memorandum in opposition to the motion, Bies cites to cases that address violations of the Eighth Amendment. It is well-settled that the "deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). Accordingly, deliberate indifference to a prisoner's serious illness or injury states a cause of action under section 1983. However, at least one court in this district has "observed that the *Estelle* Court had no occasion to discuss the responsibility of the government to those not in its custody." *Justice v. King*, No. 08-CV-6417-FPG, 2015 WL 1433303, at *26 (W.D.N.Y. Mar. 27, 2015), *aff'd,* 628 F. App'x 58 (2d Cir. 2016)(citing *McGhie v. Main*, No. 11–CV–3110 (NGG)(JO), 2011 WL 4852268, at *3 (E.D.N.Y.

Bies alleges that her son's injury resulted from a pattern and custom followed by the defendants, she fails to assert a single fact to support the existence of an alleged practice or policy. Accordingly, the undersigned further recommends that the plaintiff's civil rights claim(s) be dismissed.

### 5. Wrongful Death

Finally, Bies has also asserted a claim for wrongful death.[5] "To succeed on a cause of action to recover damages for wrongful death, the decedent's personal representative must establish, . . . that the defendant's wrongful act, neglect, or default caused the decedent's death." *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008). Moreover, "[t]he essence of the cause of action for wrongful death in [New York] is that the plaintiff's reasonable expectancy of future assistance or support by the decedent was frustrated by the decedent's death." *Lara-Grimaldi v. Cty. of Putnam,* No. 17-CV-622 (KMK), 2018 WL 1626348, at *23 (S.D.N.Y. Mar. 29, 2018) (citing *Gonzalez v. New York City Hous. Auth.*, 572 N.E.2d 598, 601 (N.Y. 1991)). While there is no question that "negligent tort-feasors may be liable for the wrongful death, by suicide, of a person injured by their negligence," *see Fuller v. Preis*, 35 N.Y.2d 425, 427 (1974), here, the undersigned has already determined that the plaintiff has

---

Oct. 12, 2011) ("parolee's Eighth Amendment claim dismissed by district court because there was no deliberate indifference to serious medical needs where mental health treatment previously provided through Probation Department abruptly stopped; he was free to find treatment on his own.").
[5] Bies' wrongful death count is also listed as Count III.

failed to sufficiently allege a cause of action for negligence. Moreover, even if Bies had sufficiently pled a plausible negligence claim, Bies has not asserted that Cory's passing caused her to suffer a pecuniary loss. Accordingly, the undersigned respectfully recommends that the plaintiff's complaint be dismissed in its entirety.

### C. Motion to Amend

As previously stated, the plaintiff requested leave to amend the complaint should the Court's decision on the motion deem such an amendment necessary. The undersigned recommends that the plaintiff's request be granted. Although it is well within the district court's discretion to deny leave to amend without even addressing the request, where, as here, leave is requested informally in a brief filed in opposition to a motion, given the nature of this case, the undersigned recommends that the plaintiff be given one opportunity to amend the pleading in an attempt to correct the deficiencies outlined in this report.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF. Any requests for an extension of time for filing objections must be directed to Judge Azrack prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal.

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
February 26, 2019

_____/s_____
ARLENE R. LINDSAY
United States Magistrate Judge